PERRY *v.* SAYLOR.

The evidence authorized the direction of a verdict finding part of the land in dispute for the plaintiff and part for the defendant ; but the proportionate interest allotted to each in the verdict which was directed was incorrectly determined.

Argued May 9, — Decided June 3, 1903.

Complaint for land.    Before Judge Henry.    Floyd superior court. October 13, 1902.

*Fouché & Fouché,* for plaintiff.    *Dean & Dean,* for defendant.

CANDLER, J.    In 1843, James Fleming acquired, by grant from the State, a lot of land in Floyd county, now known, in the classic vernacular of the vicinage, as the "Booger Hollow" lot.    Fleming died in 1850, leaving a will in which he devised the lot in question jointly to his wife and six children.    Subsequently his wife died intestate, the six children surviving her.    The plaintiff in error, Perry, acquired at different times title to the undivided interests of four of these children or their heirs at law.    Saylor, the defendant in error, acquired the interests of the other two children. Just at this point there comes upon the scene the unique and picturesque figure of one Lewis Reynolds, a witness for the plaintiff below.    Whence came Reynolds, and what is his excuse for figuring in the contest for this piece of land, are not readily apparent. According to his own statement, he had for an indefinite period "squatted" upon the Booger Hollow lot.    His sire, who had obtained it in exchange for a night's lodging and board from an unknown

man who did not pretend to have any title, had given it to him while they were " on a trade," neglecting the trifling formality of a deed.    He himself seems to have recognized that his title was not, like Cæsar's wife, above suspicion.    He says: " I never did have a deed to this land from anybody.    Alex Bobo [a neighbor, who was also quite innocent of title to this or any other land] gave me a deed to it.    He just made me a quitclaim deed, because he said I didn't have one, and I made him a quitclaim deed to a lot. We just swapped deeds, so . . provided any claim ever did come, . . he would have a deed and I would have a deed. . . 'Twas just a deed for a deed.    I knew he didn't have any deed to his, and I made him one."    And the ingenous Mr. Reynolds, with a candor truly refreshing, adds: " I believe some of them called it we was land-stealing.    I didn't call it that way."    It seems, however, that both Perry and Saylor regarded with concern the possibility of Reynolds setting up a claim to the land, and each made more or less persistent efforts to get a deed from him.    Saylor obtained an option on the land, and subsequently gave Reynolds a paper of which the following is a copy:    " For value received, I hereby agree to give Lewis Reynolds $300.00 out of the proceeds of the sale of land lot 750, third district and fourth section of Floyd county."    This was considered by Reynolds to be a contract to buy the land for the price named therein; but it seems that Saylor never paid Reynolds any money except what had been paid for the option, and Reynolds never attempted to convey the land to Saylor.    Subsequently, for a consideration, Reynolds made a deed to the land to Perry, and, thus armed, the latter brought an action against Saylor to recover the entire tract.    At the conclusion of the evidence the court directed a verdict finding for the plaintiff four sevenths undivided interest in the land, and for the defendant three sevenths, and finding also that within ten days the defendant pay to the clerk of the superior court, for the use of the plaintiff, " one hundred and twenty-eight dollars and fifty-seven cents, the same being three sevenths of three hundred dollars," in default of which it was provided that his interest should be sold and the proceeds applied to the payment of that sum to the plaintiff.    Perry made a motion for a new trial, which was overruled, and he excepted.

That both the plaintiff and the defendant are entitled to a fractional interest in the land in dispute is clear from the foregoing

statement of facts gathered from the record; but we confess ourselves at a loss to understand how the court below arrived at the particular fractions named in the verdict which was directed. Upon the death intestate of Mrs. Fleming, the widow of the original grantee from the State, the entire interest in the lot became vested in her six children. As has been seen, Perry acquired by deeds four of these shares, and Saylor the other two. It is needless to say that Reynolds is not shown to have had any interest whatever in the land. Plainly, therefore, the verdict should have been in favor of the plaintiff for four sixths of the land, instead of four sevenths. We are also unable to see any reason why the trial judge should have included in the verdict directed a finding against the defendant for a sum of money. He is not shown to have been indebted to Perry in any sum, and certainly Perry could not profit in this action by reason of any agreement between Saylor and Reynolds. To this, however, Saylor did not except, and therefore it will not furnish a ground for reversing the judgment.

The motion for a new trial complains also of the rejection of certain evidence offered by the plaintiff, but these grounds do not disclose that the court committed any material error. The judgment is reversed on the sole ground that the court erred in determining the fractional interests in the land found to be due to each party.                    *Judgment reversed. By five Justices.*